UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HENRY KLEYWEG, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:14-CV-138 JD |
| | ) |
| BANK OF AMERICA, N.A., et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

In this action, plaintiffs Henry and Claudia Kleyweg assert claims arising under the Fair Credit Reporting Act and under state law, against their mortgage company, Bank of America.[1] In general, they allege that Bank of America falsely reported their loan as delinquent and mishandled and misled them about a loan modification, causing their loan balance to inflate and preventing them from refinancing with another company at a lower rate. Discovery has now closed, and Bank of America has moved for summary judgment. For the following reasons, the Court grants summary judgment as to the claims under the Fair Credit Reporting Act, and remands the remaining state-law claims to state court for further proceedings.

**I. STANDARD OF REVIEW**

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

---

[1] The complaint names two defendants, Bank of America, N.A., and BAC Home Loans Servicing, LP, though the defendants indicate that the latter has merged into the former, making them one entity. Neither party otherwise distinguishes between the entities, so the Court refers to them as Bank of America.

"genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## II. FACTS

**A.     Legal Standard**

The Court must begin its discussion of the relevant facts by addressing the Kleywegs' burden in responding to a motion for summary judgment. As the Kleywegs acknowledge in their brief, the non-moving party cannot simply rest on the allegations contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). As some courts have put it, summary judgment is the "put up or shut up" moment in a lawsuit, when a plaintiff must "show what evidence he has that would convince a trier of fact" to find in his favor on any disputed elements. *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). Moreover, a party does not meet that burden by simply attaching exhibits to a brief; a party must cite to specific portions of the exhibits in their brief and explain how those materials support the party's position. Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Packer v. Trustees of*

*Ind. Univ. Sch. of Med.*, 800 F.3d 843, 848 (7th Cir. 2015); *Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013) ("[A] district court is not required to scour the record looking for factual disputes or to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.").

The Kleywegs have not complied with those standards here. Their brief begins with ten pages of factual recitations, many of which are taken verbatim from their complaint. Those ten pages include only five or six citations to the record, though. Even then, the citations each refer generally to one of the Kleywegs' exhibits, none of which are authenticated, and which collectively span over 300 pages. This does not satisfy their burden to "cit[e] to particular parts of materials in the record" that create disputes sufficient to defeat summary judgment. *Packer*, 800 F.3d at 848. Likewise, the substantive discussions in their brief similarly contain few citations to the record, even as to the critical factual contentions, and thus fail to properly support those contentions as required in responding to a motion for summary judgment. *Id.* Thus, the Court resolves the present motion based on the facts that are properly before it, meaning almost entirely those supplied by Bank of America.

**B.    Factual Background**

In October 2006, plaintiffs Henry and Claudia Kleyweg entered a mortgage on their home with Countrywide Home Loans, which later became Bank of America. As of February 2012, the Kleywegs were current on the loan, but Mr. Kleyweg had lost his job, so they inquired into whether they were eligible for a loan modification that might reduce their payments, which were $4,232.98 per month. On March 28, 2012, the Kleywegs received a letter from Bank of America informing them that they were approved to enter the federal government's Home Affordable Unemployment Program. Through this program, the Kleywegs entered a forbearance agreement effective April 1, 2012 through October 1, 2012. During that period, the monthly loan

payments would be suspended (but would "remain due and owing"), and Bank of America agreed not to foreclose on the property or report the loan as delinquent. At the end of the six-month period, the Kleywegs would be required to make a lump-sum payment of all of the amounts that had accrued over the previous six months, and would have to resume making their regular monthly payments. The agreement also informed them that once the forbearance period concludes, "your account will be reported as delinquent if your Loan is not completely current in accordance with your Loan documents. Accepting a loan forbearance may have a negative impact on your credit rating." [DE 62-4].

The Kleywegs entered the forbearance agreement, and thus did not make the monthly payments from April until October 2012. During that period, the parties had some discussions about a loan modification, but nothing came of those discussions at that time. When the forbearance agreement concluded on October 1, 2012, the Kleywegs were thus required to make a lump-sum payment of all past-due amounts, and to resume making their monthly payments. However, they did not do so. After not receiving the Kleywegs' monthly payment for November 2012, Bank of America reported to the consumer reporting agencies that the loan was 120 days past due.

In January 2013, the Kleywegs applied to refinance their loan with another company, but ultimately did not refinance. The Kleywegs allege that they were turned down because of the information on their credit report that they were past due on their mortgage. They did not dispute that credit information with the consumer reporting agencies at that time, though. On January 7, 2013, they were approved by Bank of America to enter a Trial Period Plan under the federal government's Home Affordable Modification Program. They made the three monthly payments pursuant to that plan beginning on February 1, 2013, and they executed a Home Affordable

Modification Agreement with Bank of America in April 2013. Towards the end of February 2013, they also sent a letter, by counsel, to the consumer reporting agencies, disputing Bank of America's report that their loan was past due. Bank of America received notice of the dispute in early March, and responded to the consumer reporting agencies by the end of March, stating that the information was accurate as reported.

At present, the Kleywegs' loan is current, and their monthly payment is lower than before, in light of the modification. However, they contend that the false reporting that their loan was past due prevented them from refinancing with another company at a better rate. They further contend that they should have been allowed to enter a modification program at the outset, and that Bank of America mishandled and misled them about the process, and that as a result, their loan balance was improperly inflated when all of the payments that had accumulated prior to the modification were added to the principal of the loan. Thus, they filed this suit against Bank of America, asserting a variety of claims arising under both federal and state law. After the Kleywegs filed this case in state court, Bank of America removed it to this Court pursuant to federal question jurisdiction, with the state-law claims included in this Court's supplemental jurisdiction. Discovery has now closed, and Bank of America filed a motion for summary judgment, which has been fully briefed.[2]

### III. DISCUSSION

The Kleywegs' complaint contains twelve counts. The first six counts arise under federal law, and assert violations of the Fair Credit Reporting Act. The latter six counts assert various

---

[2] In their response brief, the Kleywegs claim to be unable to fully respond to the motion because the magistrate judge denied a motion to compel, and because the discovery deadline passed before they were able to complete their discovery. However, the Kleywegs did not appeal the magistrate's order to the district court, nor did they move to reopen discovery. They did not file a motion under Rule 56(d) in responding to the motion for summary judgment, either, as the magistrate invited them to do if necessary. Accordingly, this argument entitles them to no relief.

claims arising under Indiana law. Bank of America has moved for summary judgment as to all counts.

## A.     Fair Credit Reporting Act Claims

The Kleywegs first bring a number of claims under the Fair Credit Reporting Act. As relevant here, the FCRA imposes two sets of duties on parties such as Bank of America that furnish credit information to consumer reporting agencies. First, under subsection (a) of § 1681s-2, furnishers of information have a duty not to report inaccurate credit information, along with other related duties, such as a duty to correct and update credit information. 15 U.S.C. § 1681s-2(a). Second, under subsection (b), furnishers of information have a duty to conduct a reasonable investigation into disputed information, if notified by a consumer reporting agency that an individual has disputed the information. Specifically, upon receiving such a notice, the furnisher of information must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . . ;
>
> (C) report the result of the investigation to the consumer reporting agency; [and]
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . .

15 U.S.C. § 1681-2(b)(1). To trigger this obligation, an individual must submit a dispute to the consumer reporting agency, which then provides notice to the furnisher of information (e.g., the bank); disputing the information directly with the furnisher does not trigger any obligation under this subsection. § 1681-2(b)(1); *Lang v. TCF Nat'l Bank*, 338 F. App'x 541, 544 (7th Cir. 2009).

The FCRA also contains two provisions establishing private rights of action. Under § 1681*o*, a consumer can recover actual damages that result from a negligent violation of the

FCRA. 15 U.S.C. § 1681*o*(a). Under § 1681n, a consumer can recover actual damages or statutory penalties of $100 to $1000, plus punitive damages, if they can prove that the violation was willful. 15 U.S.C. § 1681n(a). However, these provisions do not apply to any violations of subsection (a) of § 1681s-2: "Section 1681s-2(c) specifically exempts violations of § 1681s-2(a) from private civil liability; only the Federal Trade Commission can initiate a suit under that section." *Lang*, 338 F. App'x at 544; *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011) ("[A]lthough Purcell's claim arises under § 1681s-2(a), that section does not create a private right of action."). Thus, consumers can only sue furnishers of information for violating their duty to investigate under subsection (b), not for violating any duty under subsection (a) to report accurate information in the first instance.

Here, the Kleywegs allege that Bank of America committed a number of violations of both subsections (a) and (b). Counts 1 through 5 each allege that Bank of America violated one of the various duties under subsection (a), and Count 6 alleges that Bank of America violated its duty to investigate under subsection (b). Counts 1 through 5 fail, though, because as just discussed, there is no private right of action for violations of the duties under subsection (a). § 1681s-2(c); *Purcell*, 659 F.3d at 623. In their response brief, the Kleywegs argue that the citations in those counts to subsection (a) were scriveners errors, and those counts should have referred to subsection (b). There was no error, though; each of those counts accurately paraphrased from the portions of subsection (a) to which they cited, and alleged violations of those provisions. Regardless, the Kleywegs also asserted a violation of subsection (b) in Count 6, so to the extent they wish to pursue violations of that subsection, they can do so in relation to that

count. But because there is no private right of action for violations of subsection (a), Bank of America's motion for summary judgment is granted as to Counts 1 through 5.[3]

In Count 6, the Kleywegs allege that Bank of America violated its duty to conduct an investigation upon receiving notice from the consumer reporting agency that the Kleywegs disputed the accuracy of their credit information. In particular, they allege that Bank of America failed to correct its credit reporting to indicate that their loan was never past due, instead of reporting that it was 120 days past due as of November 2012. In moving for summary judgment, Bank of America first argues that the Kleywegs suffered no damages as a result of this alleged violation. It notes that it did not receive a notice of dispute from the consumer reporting agency until March 2013, but the denial of the Kleywegs' application to refinance their loan with another company (upon which their damages are based) occurred in January 2013, so those alleged damages could not have occurred as a result of any failure to investigate by Bank of America. *See Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609–10 (7th Cir. 2005) (finding that the plaintiff suffered no damages when the only credit applications that were denied occurred prior to the defendant's duty to investigate).

In response, the Kleywegs first appear to misconstrue Bank of America as arguing that they never submitted the requisite dispute to the consumer reporting agency, and thus never triggered Bank of America's duty to investigate. Bank of America does not dispute that the Kleywegs eventually notified the consumer reporting agency of the dispute, though. What it argues is that all of the alleged harm occurred before its duty to investigate was triggered in

---

[3] The Kleywegs also argue that violations of the duties set forth in Counts 1 through 5 could support one of their state-law claims, even if they do not have a stand-alone cause of action under the FCRA. Since the Court is relinquishing jurisdiction over the state-law claims for the reasons discussed below, the Court does not reach the merits of that argument.

March 2013, meaning that the Kleywegs suffered no actual damages. On that topic, the Kleywegs state, "The Kleywegs contend that they were denied financing due to [Bank of America's] false reporting but that they would otherwise be qualified for a refinance . . . if [Bank of America] would correct the false reporting." [DE 73-1 p. 15]. In responding to a motion for summary judgment, though, a party cannot merely "contend"—they must support their contentions with citations to evidence in the record. The Kleywegs did not do so in this instance, and thus failed to satisfy their burden. *Bagby v. Experian Info Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006) ("[D]amages are not presumed under the FCRA; rather, the consumer must affirmatively establish that she is entitled to damages."); *Ruffin-Thompkins*, 422 F.3d at 609–10 (noting that "the district court 'need not scour the record' to find . . . evidence" a party fails to cite in response to a motion for summary judgment); *Packer*, 800 F.3d at 849 (finding that summary judgment was warranted where the plaintiff "failed to support her factual assertions with appropriate citations to the relevant portions of the record so as to demonstrate why the facts material to each of her claims were disputed").[4] Thus, summary judgment is warranted for any claim for actual damages under the FCRA. As a result, the Kleywegs cannot make out a claim for a negligent violation under § 1681*o*, which requires actual damages, and could only seek statutory and punitive damages under § 1681n by establishing a willful violation.

Bank of America next argues that it committed no violation of subsection (b), so there is no basis for liability, either. It argues that upon receiving notice that the Kleywegs disputed the information that their loan was 120 days past due as of November 2012, it confirmed that the

---

[4] Earlier in their brief, the Kleywegs also claim to have suffered emotional distress, but that claim is likewise unaccompanied by citations to the record. In addition, on FCRA claims, the Seventh Circuit has "maintained a strict standard for a finding of emotional damage because this type of harm is so easy to manufacture," *Bagby*, 162 F. App'x at 605 (internal quotations omitted), and the Kleywegs' general assertions of emotional distress do not meet that standard.

9

information it furnished was accurate, and reported that result to the consumer reporting agency, thus fulfilling its duties under subsection (b). [DE 62-1, -6, -7]. In response, the Kleywegs first argue that they actually received a second forbearance agreement after the first one expired in October 2012, so their loan was not past due at all in November 2012. There is no evidence of a second forbearance agreement, though—the only evidence before the Court is that the Kleywegs entered a single forbearance agreement from April 1 to October 1, 2012, after which they failed to make the required payments, making their loan past due.

The Kleywegs also argue that even if their loan was past due in November 2012, it should have been reported as only 30 days past due, not 120, since the forbearance agreement did not expire until October 1. This argument first fails, though, because it is outside the scope of the dispute they submitted to the consumer reporting agency. In the letter by which they claim to have disputed this information, the Kleywegs asserted that the loan should be reported as current, on the basis that they had entered a second forbearance agreement taking them through February 2013.[5] But as just discussed, there is no evidence of a second forbearance agreement. And since the Kleywegs only disputed *whether* the loan was past due, not by *how much*, Bank of America satisfied its duty under subsection (b) by confirming that the loan was in fact past due at that time. *See Lang*, 338 F. App'x at 544 (holding that the bank satisfied its duties under subsection (b) by confirming the information subject to the dispute, even if other information was inaccurate); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Even if they had properly disputed this information, the Kleywegs could not show that Bank of America violated its duties under subsection (b) by failing to alter the report that the

---

[5] "Bank of America is falsely reporting past due payments to the Credit Reporting Agencies. The Kleywegs have never been behind on their payments; rather, they have entered into a deferral program starting February 2012 – February 2013 . . . ." [DE 74-1].

loan was 120 days past due. The Kleywegs' argument as to the accuracy of this information does have a commonsensical appeal—if the payments were deferred to October 1, how could they be 120 days past due by November?—but they make no effort to tie their argument to the terms of the forbearance agreement itself, which offers some support for Bank of America's assertion that the loan was in fact 120 days past due in November 2012. The agreement states that the monthly payments would be suspended during the six-month term of the forbearance agreement, but that the payments "are not waived, cancelled or extinguished," and that all of the monthly payments "remain due and owing." [DE 62-4]. Bank of America agreed that it would not foreclose on the mortgage or report the loan as delinquent while the forbearance agreement was in effect, during which time the Kleywegs would not have to make the monthly payments. The agreement further notified them, though, that once the forbearance period expired, "you will be responsible for payment of the entire past due balance on your loan which will include any Suspended Payments," (thus implicitly characterizing the suspended payments as "past due"), which would have to be paid in a lump sum at the end of the period. *Id.* Finally, the agreement notified the Kleywegs that once the forbearance period concluded, "your account will be reported as delinquent if your Loan is not completely current in accordance with your Loan documents." *Id.*

When the forbearance period concluded, the Kleywegs did not make a lump sum payment of the monthly payments that had accumulated over the previous six months, and they did not resume making their monthly payments. Accordingly, by November 2012, the Kleywegs had over six months of payments that were due and had not been paid, and those payments were no longer suspended, so Bank of America reported their loan as 120 days past due. Bank of America argues that this report was accurate, as while it agreed not to foreclose or report the loan as delinquent during the forbearance period, the monthly payments continued to accrue and were

"not waived, cancelled or extinguished," but "remain[ed] due and owing." [DE 62-4]. And when they were not paid at the end of the agreement as required, and were no longer suspended, Bank of America considered each of the monthly payments past due from the time they came due.

Neither party has identified any authority that conclusively resolves whether Bank of America's reporting was technically proper under these circumstances, but the narrow remedies available to the Kleywegs under the statute preclude them prevailing on their claim. To establish liability under subsection (b) without actual damages, the Kleywegs must establish that Bank of America not only acted unreasonably, but willfully so. § 1681s-2(b), § 1681n(a). Because Bank of America's interpretation has a reasonable basis in the terms of the forbearance agreement, the Kleywegs cannot establish that Bank of America willfully violated its obligations under subsection (b) by failing to correct that information. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) ("We emphasize that the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."). And with neither a willful violation nor actual damages, the Kleywegs cannot make out any claim for relief for a violation of subsection (b), so summary judgment on Count 6 is granted.

**B.  State Law Claims**

The remainder of the Kleywegs' claims arise under state law. There is no independent basis for federal jurisdiction over those claims, though. Thus, having resolved the only federal claims in this case, the Court exercises its discretion to remand those claims to state court for further proceedings. The sole basis for this Court's jurisdiction over the state-law claims is supplemental jurisdiction under 28 U.S.C. § 1367. In its notice of removal, Bank of America stated that this case was removable solely because of the presence of claims arising under federal

law, pursuant to 28 U.S.C. § 1331. It also referred to the remaining claims as "non-removable state-law claims" that fell within this Court's supplemental jurisdiction, [DE 6], and the parties' citizenship has not been alleged, so no independent basis for jurisdiction is present in the record.

Under § 1367, a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)). The Court finds no reason to rebut that presumption here, so it exercises its discretion to relinquish jurisdiction over the supplemental state-law claims, which will be remanded to state court for further proceedings.

## IV.  CONCLUSION

Bank of America's motion for summary judgment is GRANTED in part, as to the claims arising under federal law. The Court relinquishes jurisdiction over the supplemental state-law claims, and REMANDS this action to state court for further proceedings as to those claims.

SO ORDERED.

ENTERED: February 10, 2017

                                              /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court